**STATE OF RHODE ISLAND** **SUPERIOR COURT**
**PROVIDENCE, SC**

CA 05 047T

**MATHER FAMILY TRUST**

***Plaintiff,***

**vs.** **C.A. NO.: 05- 0214.**

**7-ELEVEN, INC.**

***Defendant.***

# COMPLAINT

## *Introduction*

The Plaintiff files this instant action against the Defendant, 7-Eleven, Inc. (hereinafter, the "Defendant"), for breach of contract and damages arising from that certain property owned by the Plaintiff, Mather Family Trust, and leased to the Defendant for the use and occupancy of a convenience store and gasoline service station. The Plaintiff requests damages in an amount provable at trial for the Defendant's breach of its lease agreement with the Plaintiff and for expenses caused as a result of the Defendant's abuse and destruction of the Plaintiff's property.

## *Parties*

1. The Plaintiff, Mather Family Trust (hereinafter referred to as the "Plaintiff") is a trust established pursuant to the laws of the Commonwealth of Massachusetts with a mailing address of P.O. Box 4143, Brockton, Massachusetts 02303.

#126233

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

SUPERIOR COURT
FILED
HENRY S. KINCH JR., CLERK
2005 JAN 13 P 4: 30

2/16

2. The Defendant, 7-Eleven, Inc., is a duly organized Delaware corporation with its principal place of business at 2711 North Haskell Avenue, Dallas, TX 75204-2906 (hereinafter referred to as the "Defendant"). The Defendant is registered to do business in the State of Rhode Island and operates and/or owns convenience stores throughout this state.

***Jurisdiction***

3. Defendant has sufficient contacts with the State of Rhode Island for this Court to exercise personal jurisdiction over them. Furthermore, this Court has jurisdiction to adjudicate the within claims, pursuant to Rhode Island General Laws Section 8-2-14.

***General Allegations***

4. The Plaintiff is the owner of that certain real property located at 800 Crescent Street, Brockton, Massachusetts, which property is utilized as a convenience and gasoline service station (the "Property").

5. On or about March 8, 1989, the Plaintiff entered into a lease agreement for the Property with Christy's Market, Inc. (hereinafter "Christy's"), which lease agreement provided that the Property was to be leased as a "24 hour convenience food store and gasoline station." Thereafter, the lease agreement was amended in writing by the parties. *See* Exhibit A, a copy of the lease agreement and amendments associated therewith (the "Lease Agreement").

6. The Defendant is the successor in interest and assignee of the Lease Agreement by way of an assumption and assignment of the obligations and responsibilities of Christy's with respect to the Lease Agreement. Consequently, the

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Defendant has accepted the terms and conditions of the Lease Agreement and agreed to perform those terms and conditions in place of Christy's.

7. Schedule C attached to the Lease Agreement provides that the monthly rent for the original term of the Lease Agreement is as follows:

> "$38,400 or 4% of gross sales which ever is greater plus .01 per gallon on thru-put in years 1-5, plus .015 per gallon on thru-put in years 6-10."

8. Schedule C attached to the Lease Agreement provides that the monthly rent for the first option period is as follows:

> "$44,100 or $38,400 plus 70% of increase in CPI or 4% of gross sales, whichever is greater. Plus .02 per gallon on thru-put.

9. Schedule B attached to the Lease Agreement provides that the original term of the use and occupancy of Christy's is ten (10) years commencing on June 13, 1989 with the right to four (4) five (5) year options to renew.

10. On or about June 30, 1999, the original term of the Lease Agreement terminated and Christy's and its successor in interest and assignee, the Defendant, agreed to exercise its option to renew for an additional term of five (5) years.

11. The first option period expired on June 30, 2004, at which time the Defendant opted not to continue the Lease Agreement and terminated its use and occupancy of the Property.

12. In conjunction with the Property, the Plaintiff leased to the Defendant certain equipment associated with the operation of a gasoline service station, which equipment is within the exclusive ownership of the Plaintiff and included Underground Storage Tanks ("USTs"); two (2) gasoline dispensers; an automatic tank gauge ("ATG"); a UST monitoring system and console; and, seven monitoring wells

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

13. Section 7.7 of the Lease Agreement provides as follows:

> [a]t the end of the original term, or at the conclusion of the last option period, if in fact exercised, or at the earliest termination of this lease, Lessee shall peaceably yield up the premises to Lessor (after removing the goods and effects of Lessee and those claiming under it) in good order, repair and condition, reasonable wear and tear, damage by fire and other casualties covered by "all risk" insurance policies on the premises only excepted.

14. Section 8.1(b) of the Lease Agreement provides as follows:

> [t]he Lessee further agrees to keep said premises, including without limitation the building, sidewalk, and parking lot thereon in a clean and sanitary condition and free from trash, improperly stored inflammable material, and other objectionable matter. The Lessee shall not permit the lease premises to be overloaded, damaged, stripped or defaced, nor commit, permit or suffer any waste....

15. On or about January of 2004, the Defendant vacated the Property and closed the conveyance and gasoline service station operation after informing the Plaintiff on December 12, 2003 that it would not exercise a second option to renew the lease term.

16. Upon the Defendant's departure from the Property, it removed those items associated with the operation of a gasoline service station that did not belong to it. In removing such items, the Defendant caused substantial damage to the Property.

17. The damage to the Property caused by the Defendant was left to the Plaintiff to repair.

18. In vacating the Property, the Defendant removed pipes, vents, tubing, bathroom sinks, and equipment associated with the operation of a gasoline station, including but not limited to the Automatic Tank Inventory System (hereinafter referred to "ATG") and console.

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

19. When the Defendant vacated the Property, it caused damage to the interior and exterior walls of the building as well as broken storefront windows and damage to the concrete and asphalt parking lot. All of said damages were admitted in a correspondence sent by the Defendant to the Plaintiff's legal counsel on April 27, 2004. *See* Exhibit B, a copy of a correspondence from 7-Eleven dated April 27, 2004.

20. The Lease Agreement provides that the Defendant is to leave the property in broom clean condition. The Defendant, however, vacated the Property leaving behind debris both inside and outside of the Property along with broken items, such as glass and electrical and mechanical equipment.

**COUNT I**
***(Breach of Contract – damages to the Leased Property)***

21. The Plaintiff incorporates by reference paragraphs 1 though 20 above as if fully set forth herein.

22. The Lease Agreement by and between the Plaintiff and the Defendant is a valid, binding and enforceable agreement.

23. The Defendant breached the Lease Agreement by failing to turn over the Property to the Plaintiff at the termination of the first option period in broom clean condition with the equipment owned by the Plaintiff in working order, except for reasonable wear and tear.

24. The Defendant breached the Lease Agreement by removing equipment associated with the gasoline service station, which equipment was owned by the Plaintiff and included an ATG monitoring system.

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

25. As a direct and proximate result of the Defendant's breach of the Lease Agreement and its removal of the ATG monitoring system associated with the operation of a gasoline service station, the Plaintiff incurred costs in respect to the replacement of the ATG monitoring system.

26. As a direct and proximate result of the Defendant damaging the floor and the exterior and interior walls of the building located on the Property, the Plaintiff incurred costs and damages in excess of Thirty Thousand ($30,000) Dollars.

27. The Defendant breached the Lease Agreement by causing damage to the floor of the Property as well as the exterior and interior walls of the building, which damage was left to the Plaintiff to repair.

28. The Defendant breached the Lease Agreement by causing damage to the concrete and asphalt parking lot surrounding the building, which included the destruction of a manhole.

29. As a direct and proximate cause of these breaches, the Plaintiff has suffered substantial damages.

**WHEREFORE**, the Plaintiff requests that this Honorable Court enter judgment against the Defendant, 7-Eleven, Inc., for all damages provable at trial for the Defendant's breach of the Lease Agreement; it's illegal conduct and for costs incurred as a result of the Defendant's actions and inactions plus attorneys' fees, costs and expenses incurred in prosecuting this instant action.

:rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

**COUNT II**
***(Breach of Lease – Closure of Convenience Store and Gasoline Service Station)***

30. The Plaintiff incorporates by reference paragraphs 1 though 29 above as if fully set forth herein.

31. The Lease Agreement provides pursuant to Section 7.1 as follows:

> [t]he Lessee shall open for business as soon after the date of this lease as is possible. Thereafter, Lessee shall regularly keep the premises open for business during normal business hours. The Lessee shall use the premises for the purpose set forth in section 1.5 hereof or any other lawful use.

32. The Lease Agreement provides pursuant to Section 1.5 as follows:

> [l]essee shall use the Premises has a 24 hour convenience food store and gasoline or other combustible fuel station, if permitted, similar in concept and operation as other such stores presently operated by the Lessee or any other lawful use.

33. Prior the expiration of the lease term, the Defendant closed its store and removed equipment and supplies necessary for the operation of a gasoline service station much of what was removed by the Defendant belonged to the Plaintiff.

34. As a direct and proximate result of the Defendant damaging the Property and removing equipment owned by the Plaintiff and necessary for the operation of a convenience store and gasoline service station, the Plaintiff was not able to re-let the premises in a seamless manner as contemplated by the Lease Agreement.

35. As a direct and proximate result of the Defendant closing the store and removing the equipment necessary of the operation of a gasoline service station and convenience store, the Plaintiff was not able to re-let the Property as an on going business to another convenience store and gasoline service station operator.

rue Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

36. The Defendant breached the Lease Agreement by failing to submit the Property to the Plaintiff as an on-going business; thus, allowing the Plaintiff to re-let the Property as a convenience store and gasoline service station.

37. As a result of the Plaintiff not being on able to re-let the Property in a seamless manner, it suffered damages and costs in excess of One Hundred Fifty Thousand ($150,000) Dollars.

38. As a result of the Plaintiff not being able to re-let the Property as an on-going business, it suffered damages and costs in excess of One Hundred Fifty Thousand ($150,000) Dollars.

**WHEREFORE,** the Plaintiff requests that this Honorable Court enter judgment against the Defendant, 7-Eleven, Inc., for all damages provable at trial for the Defendant's breach of the Lease Agreement; it's illegal conduct and for costs incurred as a result of the Defendant's actions and inactions plus attorneys' fees, costs and expenses incurred in prosecuting this instant action.

**COUNT III**
***(Breach of Contract – Failure to Pay Rent)***

39. The Plaintiff incorporates by reference paragraphs 1 though 38 above as if fully set forth herein.

40. Schedule C attached to the Lease Agreement provides that the monthly rent for the original term of the Lease Agreement is as follows:

> "$38,400 or 4% of gross sales which ever is greater plus .01 per gallon on thru-put in years 1-5. plus .015 per gallon on thru-put in years 6-10."

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

41. Schedule C attached to the Lease Agreement provides that the monthly rent for the first option period is as follows:

> "$44,100 or $38,400 plus 70% of increase in CPI or 4% of gross sales, whichever is greater. Plus .02 per gallon on thru-put.

42. The Defendant breached the Lease Agreement by failing to accurately provide annual information regarding Gross Sales for purposes of establishing the annual rent per the Lease Agreement, particularly Section C attached to the Lease Agreement.

43. As a direct and proximate case of this breach, the Plaintiff has suffered damages.

**WHEREFORE**, the Plaintiff requests that this Honorable Court enter judgment against the Defendant, 7-Eleven, Inc., for all damages provable at trial for the Defendant's breach of the Lease Agreement; it's illegal conduct and for costs incurred as a result of the Defendant's actions and inactions plus attorneys' fees, costs and expenses incurred in prosecuting this instant action.

Respectfully submitted,

**MATHER FAMILY TRUST**

By and through its attorneys,

Michael A. Kelly, Esquire (#2116)
John O. Mancini, Esquire (#6061)
55 Pine Street, Suite 5000
Providence, RI 02903
Tel#: (401) 490-7334
Fax#: (401) 490-7874

Date: January 10, 2005

NEW #48 - Brockton 800 Crescent

LEASE AGREEMENT

See Amend #1 and Amend #2

LEASE dated MARCH 8 1989 by and between MATHER FAMILY TRUST of 6 HOWARD LANE, AVON, MASS. 02322 (hereinafter referred to as "Lessor"), and CHRISTY'S MARKET, INC., a Massachusetts business corporation of 22 Christy's Drive, Brockton, Massachusetts 02401 (herinafter referred to as "Lessee").

ARTICLE I
DEFINITION OF TERMS

1.1. Premises. Commercial property as more completely described on the attached Schedule "A" attached hereto and made a part hereof.

1.2. Original Term. The Original Term and all options shall be as set out on the attached Schedule "B" attached hereto and made a part hereof.

The lease extensions shall be automatic so that unless the Lessee shall give to the Lessor notice that it does not intend to renew this Lease, which notice must be given not later than ninety (90) days prior to the expiration of the preceding term, the parties shall be bound to the agreements of this Lease for such additional term of years as set forth.

1.3. Commencement Date. The Commencement Date shall be the date set forth on Schedule B, attached hereto and made a part hereof. Lessee's obligations hereunder are specifically contingent upon receipt of all necessary permits, licenses and governmental authorizations (including but not limited to a Common Victualers license or its equivalent) to build/renovate, open, and operate the premises as set forth in paragraph 1.5.

1.4. Rent. The rent payable by Lessee to Lessor during the Original Term and during each additional option term, as measured from the Commencement Date shall be the amounts shown on the attached Schedule "C" attached hereto and made a part hereof.

1.5. Use of Premises. Lessee may use the Premises as a 24 hour convenience food store and gasoline station, if permitted, similar in concept and operation as other such stores presently operated by the Lessee or any other lawful use.

1.6. Lessee's Public Liability Insurance. $1,000,000 single limit for bodily injury or death and $500,000 for property damage.

1.7. Broker. None.

1.8. Address for Notices, Lessor. As set out above.

1.9. Address for Notices, Lessee. 22 Christy's Drive, Brockton, Massachusetts 02401.

ARTICLE II
PREMISES

2.1. Premises. Lessor hereby leases to Lessee and Lessee leases from Lessor for the term and upon the terms and conditions hereinafter set forth, the premises described in Schedule "A", together with the building and other improvements to be constructed thereon, and together with the right to use all adjoining parking areas, driveways, sidewalks, roads, alleys and means of ingress and egress, insofar as Lessor has the power to lease or license the use thereof.

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

## ARTICLE III
## TERM OF LEASE

3.1. Original Term. The original term of this lease shall be the number of years set forth in Schedule "B", hereinabove plus the fraction of a month remaining after the Commencement Date during the month in which the Commencement Date shall occur; provided, however, if the Commencement Date shall occur on the first day of a month, then the Original Term of this lease shall be only the number of years set forth in Schedule "B", and provided further that this lease shall not have been sooner terminated or extended as hereinafter provided.

3.2. Commencement Date, Recordation. The Commencement Date as referred to herein shall be as set forth in Section 1.3. Each of the parties hereto shall upon demand of the other, execute and acknowledge a so-called "Notice of Lease", in recordable form, setting forth the parties, the commencement and termination dates of the term hereof, description of the premises, options for extension of the term and such other information as may be required for recording, or as may be mutually agreed upon by parties.

## ARTICLE IV
## RENT

4.1. Lessee shall pay Lessor rent during the Original Term and any extensions in the amount set forth in Schedule "C". All rent shall be payable in monthly installments, payable in advance upon the first day of each calendar month included within the term of this lease. Rent for any fraction of a month at the commencement and termination of the term of this lease shall be prorated. All rent and other payments to be made by Lessee to Lessor shall be made payable to Lessor and sent to Lessor at the place to which notices to Lessor are required to be sent unless Lessor shall direct otherwise by like notice.

## ARTICLE V
## TAXES

5.1. ~~Lessee agrees to pay all taxes levied upon personal property, including trade fixtures, signs, and inventory, kept on the leased premises.~~ Lessee agrees to pay its pro rata share of real estate taxes as stated in Schedule "C" of this lease. Such real estate taxes shall be apportioned in the first year of the term of this lease and in the year in which shall occur the termination or expiration of said lease, in the event that said lease shall ~~be in~~ effect for less than a full tax year in either the ~~first~~ year of the term or in the year in which shall occur the ~~termination or expiration of said lease~~. Lessee shall have the right in its own name or the name of the Lessor to contest or review by legal proceedings or otherwise any such tax lien or assessment (under protest) or shall if requested, either deposit with Lessor in trust or provide an indemnity bond in an amount equal to an amount sufficient to cover the contested item together with any interest, penalties or costs that may

ded
illy

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

reasonably be expected. When any such contested item shall have been settled or paid, any sums deposited with Lessor in trust shall be repaid to the Lessee, less any expenses incurred by Lessor. Lessee shall be entitled to any refund which may be made of any tax, levy, charge or assessment which has been paid by Lessee. Lessee shall pay all license fees which may be imposed upon the business of Lessee conducted on the premises.

The expression "real estate taxes" used herein shall also mean all ad valorem taxes and betterment assessments, water and sewer use charges, where applicable, imposed or assessed upon or against real estate by any public authority having jurisdiction, or any property taxes assessed in lieu of such.

Lessor shall pay taxes within 30 days of presentation, semi annually and annually.

## ARTICLE VI
## UTILITIES

6.1. From and after the commencement date, Lessee shall pay for all of its requirements for utilities, including, but not limited to, gas, steam, water, electricity, sewer charges, other municipal charges, and the like, and shall pay for heating and air conditioning the Premises.

## ARTICLE VII
## USE OF PREMISES

7.1. Use of the Premises. The Lessee shall open for business as soon after the date of this lease as is possible. Thereafter, Lessee shall regularly keep the premises open for business during normal business hours. The Lessee shall use the premises for the purposes set forth in section 1.5 hereof or any other lawful use.

7.2. Lessor's Title and Quiet Enjoyment. Lessor covenants and warrants that Lessor is seized in fee simple title to the premises, free, clear and unencumbered. Lessor covenants that so long as Lessee fulfills the conditions and covenants required of it to be performed, it will have peaceful and quiet possession thereof. Lessor further covenants and warrants that it has good right, full power and lawful authority to make this Lease for the full term and any extension thereof.

In the event that the premises are not free, clear and uncumbered or become burdened through no act or neglect of the Lessee, or in the event of a breach of either of these covenants whether intentional or otherwise, Lessor will pay all costs and damages resulting therefrom to the Lessee, including reasonable attorney's fees and Lessee shall have the right and the option of cancelling this Lease, thereby being released of all of the several covenants herein contained as of the date that notice of the excercise of such option is given to the Lessor.

7.3. Liens. The Lessor and Lessee covenant each with the other not to permit any lien to be filed against the premises on account of non-payment or dispute with respect to labor or materials furnished in connection with construction or any subsequent repairs, modifications or additions thereof, nor shall the parties permit any judgment, lien or attachment to lie against

See Amendment for addition language re mortgage for lessor



the premises for any other reason. Should any lien of any nature be filed against the premises the party from whose fault or alleged debt such lien arises shall within 30 days cause such lien to be removed by substitution of collateral or otherwise.

In the event that Lessee, its Sublessees or assigns acquire personal property to be installed and used upon the premises subject to retained title, conditional sale contract, chattel mortgage or other security agreement, the Lessor agrees to execute and deliver to any such secured creditor a waiver of any lien Lessor may have upon such personal property. Such waiver will be on a form provided by Lessee authorizing the secured creditor to enter upon the premises and remove such personal property in the event of default under the terms of the security agreement.

endment to 7.3 →

7.4. Assignment and Subletting. Nothwithstanding any other provisions of this lease, Lessee covenants and agrees that it will not assign, mortgage, pledge or otherwise transfer this lease or sublet (which term, without limitation, shall include the granting of concessions, licenses, and the like) the whole or any part of the premises without in each instance having first received the express written consent of Lessor which consent shall not be unreasonably withheld, and in any case where Lessor shall consent to such assignment or subletting, the Lessee named herein shall remain fully liable for the obligations of Lessee hereunder, including, without limitation, the obligation to pay the rents and other amounts provided under this lease. The collection of rent by Lessor from any assignee, sublessee or other occupant, after default by Lessee shall not be deemed a waiver of this covenant or the acceptance of assignee, sublessee or occupant as Lessee or a release of Lessee from the further performance by Lessee of the covenants in this lease on Lessee's part to be performed. Notwithstanding the aforesaid, Lessee may assign this Lease Agreement or sublet the leased premises to a subsidiary or controlling corporation, or to a franchise of lessee, provided (and it shall be a condition of the validity of any such assignment) that such subsidiary or controlling corporation agrees directly with Lessor to be bound by all the obligations of Lessee hereunder, including without limitation the obligation to pay the rent and other amounts provided for under this lease, and the covenant against further assignment; but such assignment shall not relieve the Lessee named herein of any of its obligations hereunder, and Lessee shall remain fully liable therefor.

7.5. Signs. The Lessee shall have the right to install and maintain upon the demised premises its standard facia sign provided that said right shall be subject to any required local governmental approvals, permits or licenses, and that Lessee at its own expense shall obtain any such necessary approvals, permits or licenses prior to installation of any sign.

7.6. Lessor's Right to Inspect and Exhibit. Lessee shall permit Lessor and its agent to examine the demised premises at reasonable times and to show the same to prospective purchasers.

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

and lenders, and to affix to any suitable part of said premises a notice for letting (for the period commencing four (4) months prior to the expiration of the term of this lease) or selling thesaid premises or building, and shall permit Lessor to enter the demised premises, without charge, to make such repairs, improvements, alterations, or additions as may be required in order to comply with the requirements of the lease, or of any public authority having jurisdiction of the premises, or to facilitate making repairs required of Lessee which Lessee has failed to make promptly, or to exercise any of Lessor's rights under this lease, and for any of such purposes to use or occupy such portions of the demised premises as may be reasonably necessary therefor. Lessor shall not, in the course of any such entry, unreasonably interfere with the conduct of business in the demised premises. Lessor reserves the right to make forceable entry to prevent or minimize injury or substantial damage to property.

7.7. Yielding Up, Trade and Other Fixtures. At the end of the original term, or at the conclusion of the last option period, in fact exercised, or at the earliest termination of this lease, Lessee shall peaceably yield up the premises to Lessor (after removing the goods and effects of Lessee and those claiming under it) in good order, repair and condition, reasonable wear and tear, damage by fire and other casualties covered by "all risk" insurance policies on the premises only excepted.

The usual trade fixtures and furniture which may be installed in the premises prior to or during the term hereof at the cost of the Lessee may be removed by Lessee.

In the event of the Lessee's failure to remove any of Lessee's property from the premises, Lessor is hereby authorized, without liability to Lessee for loss or damage thereto, and at the sole risk of Lessee, to remove and store any of the property at Lessee's expense, or to retain same under Lessor's control, or to sell at public or private sale, without notice, any or all of the property not so removed and to apply the net proceeds of such sale to the payment of any sum due hereunder.

7.8. Compliance with Laws. The Lessee agrees that no trade or occupation shall be conducted on the leased premises or use made thereof which will be unlawful, improper, noisy or offensive, or contrary to any state or federal law or municipal by-law or ordinance in force in the city or town in which the premises are situated.

The Lessee further shall not permit any use of the leased premises which will make voidable any insurance on the property of which the leased premises are a part, or on the contents of said property, or which shall be contrary to any law or regulation from time to time established by the New England Fire Insurance Rating Association, or any similar body succeding to its powers.

In the event any use of the premises by the Lessee or permitted by the Lessee shall increase the rate of insurance on the premises, Lessee agrees to promptly pay on demand any increase resulting therefrom.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

ARTICLE VIII
MAINTENANCE AND ALTERATIONS

8.1. Lessor's & Lessee's Maintenance Responsibilities

(a) Lessee agrees to keep the interior of the building in good repair, including plumbing, electrical wiring, ventilation, air conditioning and heating equipment, and be responsible for all glass, doors, windows and door and window frames.

(b) The Lessee further agrees to keep said premises, including but without limitation the building, sidewalk, and parking lot thereon, in a clean and sanitary condition and free from trash, improperly stored inflammable material, and other objectionable matter. The Lessee shall not permit the leased premises to be overloaded, damaged, stripped or defaced, nor commit, permit or suffer any waste. The removal of snow or ice from the leased premises as shown on Schedule "A" shall be the responsibility of the Lessee. Lessee shall apply for and maintain in good standing all Licenses and permits necessary for the storage of inflammable materials on the premises.

(c) The Lessee shall be required to maintain the interior of the premises, the store front, the doors, windows, door and window frames, plate glass and showcases surrounding the premises, all plumbing, sewage and sprinkler fixtures and equipment within the premises, fixtures and interior walls, floors and floor coverings, ceilings, signs (including exterior signs where permitted), all wiring, electrical systems, the heating ventilation and air conditioning systems (Lessee agreeing to institute and maintain a program of regular maintenance work therefor), interior building appliances and similar equipment.

Lessee shall, at Lessee's expense, repaint, refurbish, and remodel the premises and any part and portion thereof from time to time to assure that the same are kept in a first-class, tenantable and attractive condition throughout the term of this lease. Lessee shall maintain the premises reasonably free and clear of all rubbish and refuse at its own expense and in covered containers.

Lessee further agrees that the premises shall be kept in a clean, sanitary and safe condition in accordance with the Laws of the Commonwealth of Massachusetts and ordinances of the city or town within which the premises are located, and in accordance with all directions, rules, and regulations of the Health Officer, Fire Marshall, Building Inspector, and other property officers of the governmental agencies having jurisdiction thereover.

(d) From and after commencement date, Lessee shall be responsible for the maintenance and repair of underground gasoline tanks and piping, as well as any soil or water contamination.

8.2. Lessee's Alteration Responsibilities

(a) The Lessee shall not make structural alterations or additions to the leased premises without securing

True Copy Attest

Office of Clerk of Superior Cou
Counties of Providence & Bris
Providence, Rhode Island

the prior written consent of the Lessor, which consent shall not be unreasonable withheld. Lessee may, however, make non-structural alterations or additions without such consent. Any and all such allowed alterations or additions, whether structural or non-structural, shall be at Lessee's sole expense and shall be made in a good, workmanlike manner, employing materials of good quality and complying with all applicable governmental regulations. Lessee shall not permit any mechanics' liens, or similar liens, to remain upon the leased premises for labor and materials furnished to Lessee or claimed to have been furnished to Lessee in connection with work or materials of any character performed or delivered or claimed to have been performed or delivered at the direction of Lessee and shall cause any such lien to be released of record forthwith without cost to Lessor. Any alterations or improvements made by the Lessee shall become the property of the Lessor at the termination of occupancy as provided herein.

(b) Any and all alterations, additions, improvements and fixtures which may be made or installed upon the premises and which in any manner are attached to the floors, walls or ceilings (including, without limitation, linoleum or other floor covering of similar character which may be cemented or otherwise adhesively affixed to the floor) shall remain upon the premises, and at the termination of this lease shall be surrendered with the premises as a part thereof without disturbance, molestation or injury.

(c) Lessee covenants that it will procure and pay for any license or permit required by law for any use made of the premises or with respect to any alterations or improvements made thereon.

(d) If the building on said premises shall be rendered untenantable by fire or other casualty during the last three (3) years of the original term of this Lease or during any extension of the term, to the extent of Fifty percent (50%) or more of the insurable value, Lessee may, at Lessee's option, to be evidenced by notice in writing given to Lessor within thirty (30) days after the occurrence of such damage or destruction, elect to terminate this Lease as of the date of the damage or destruction.

(e) Lessor has agreed that Lessee shall renovate an add-on 400 (+-) square feet to the east, or inner side of the building, to attain approximately 2800(+-) square foot building.

8.3. Lessor's Maintenance Responsibilities. Lessor shall be responsible for any and all exterior repairs of any kind and nature inclusive of repairs to the roof, parking areas and walls.

(a) Lessor at his sole cost and expense within 30 days of the signing of this lease shall have the underground gasoline tanks and piping on the premises tested for leaks and general condition. Lessor shall also have soil and groundwater tested for contamination. Lessee and Lessor shall equally share the expense of soil and groundwater test. Lessor shall be responsible for any present contamination.

(b) Lessor shall add on to the building on the "river side" and shall not do so in a manner that will effect the operation of the Lessee.

nulled will

nulled will

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

## ARTICLE IX
## INDEMNITY AND PUBLIC LIABILITY INSURANCE

9.1. Indemnity. The Lessee agrees to indemnity and hold the Lessor harmless from and against any and all claims, costs, expenses and liabilities of whatever nature for losses of or damages to any property, or death or injury to any persons, including without limitation those losses, damages, death or injury arising from any act, omission or negligence of the Lessee, or Lessee's contractors, licensees, agents, servants, employees, concessionaires, customers, assignees or sublessees, occuring on or about the premises, or arising out of the occupancy of said premises, unless caused by the negligence of Lessor.

9.2. Lessee's Insurance. Lessee shall continuously maintain in full force during the original term and during each additional option term hereof a general comprehensive public liability insurance policy or policies of public liability and property damage insurance covering the premises with minimum limits of liability in the amounts set forth in Section 1.6, together with such increases in coverage as Lessor may reasonably request from time to time in writing. Said policies shall be issued by insurance companies authorized to do business in the Commonwealth of Massachusetts, and shall name Lessor as an additional insured. Lessee shall deliver to Lessor certificates evidencing such coverage at the time of the execution of this lease, and certificates evidencing renewal of such coverage at least fifteen (15) days prior to the expiration of the coverage to be renewed. All such insurance policies shall provide that such policies shall not be cancelled or modified without at least thirty (30) days prior written notice to Lessor.

9.3. Lessee's Risk. Lessee agrees to use and occupy the premises at its own risk; and, agrees further that Lessor shall have no responsibility or liability for any loss of or damage to fixtures or other personal property of Lessee. The provisions of this section shall apply at all times during the whole of the original term hereof and during each additional option term.

## ARTICLE X
## LESSEE'S INSURANCE AND WAIVER OF SUBROGATION

Lessee shall during the original term hereof and during each additional option term, at its own expense, continuously keep the building and improvements now or hereafter located on the demised premises insured under an "all risk" policy in amounts not less than one hundred (100%) percent of the full replacement value thereof. Such policy shall name the Lessor as an additional insured and shall provide that the proceeds be payable to Lessor and Lessee as their interests may appear. Such insurance policy shall include a provision which denies to the insurer acquisition by subrogation of the right of recovery against either the Lessor or Lessee. Lessee shall deliver to Lessor certificates evidencing such coverage, at the time of execution of this lease, and certificates evidencing the renewal of such coverage at least fifteen (15) days prior to the expiration of the coverage to be renewed. In the event that the insurer issuing said all risk insurance policy shall charge an extra premium as a result of the denial or subrogation rights, the Lessee shall also pay said extra premium.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Lessor hereby releases Lessee from all liability or responsibility for any loss or damage caused by fire or any other peril or casualty covered under an "all risk" insurance policy, and Lessee hereby releases Lessor from all Liability or responsibility for any loss or damage caused by fire or any other peril or casualty covered under an "all risk" insurance policy to the extent that such an insurance policy is procured and maintained by Lessor as provided for above, or to the extent that such loss or damage is otherwise covered by insurance.

NS

## ARTICLE XI
## DAMAGE TO PREMISES

11.1. Fire or Casualty. In the event that the leased premises shall be damaged or destroyed by fire, the elements, or any other "all risk" casualty insured against by the Lessor, then the same shall, except as hereinafter otherwise provided, be repaired or restored by the Lessor as speedily as possible to substantially the same condition that they were in immediately prior to such event, but due allowance shall be made for any reasonable delay arising in connection with inability to procure labor or materials or any other cause reasonably beyond the Lessor's control. All insurance proceeds received by the Lessor and Lessee on account of such damage or destruction, as provided in Article X of this Lease Agreement, shall be applied by the Lessor and Lessee to the payment of the cost of such repair and restoration, as such work progresses.

In the event that the damage or destruction of the leased premises should render the whole or any part thereof untenantable and unsuitable for use and occupation by the Lessee, and said whole or part thereof cannot reasonably be expected to be restored or rebuilt within a one (1) year period, then a just proportion of the annual minimum rent hereinbefore reserved, according to the nature and extent of the injury to the leased premises, shall be suspended or abated until the leased premises shall have been repaired or restored by the Lessor as above set forth.

11.2. Eminent Domain.

Total Permanent:

If at any time during the term of this lease or any extension thereof, the entire premises or, in the judgment of Lessee, such a substantial portion thereof as would render the balance of the premises not suitable for the use to which the premises was being utilized immediately prior thereto by the Lessee, shall be taken or appropriated by any competent authority for public or quasi-public use, this Lease shall terminate upon the date that possession is surrendered to the condemning authority, at which time all rights and obligations between the parties shall cease and rents and other charges apportioned. The taking of any portion of the building, fifteen percent (15%) or more of the then existing parking area not reasonably replaceable by the Lessor from contiguous land, or the loss of the ingress and egress as then established unless comparable access can be made available, shall be considered such a substantial

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

taking as would render the use of the premises not suitable for Lessee's use. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of the Lessor at the expiration of the full term hereof, the loss of all improvements paid for by the Lessee, the loss of Lessee's leasehold estate, and such additional relief as may be provided by law shall be the basis of Lessee's damages against the condeming authority if a separate claim therefor is allowed under applicable law, or basis of Lessee's damages to a portion of the total award if only one award is made.

Partial Permanent:

In the event of a permanent partial taking or appropriation not resulting in a termination of this Lease, the Lessee shall be entitled to a reduction of rent in such amount as shall be just and equitable. In consideration of such reduction of rent, the Lessee waives any claim for damage to or loss of its leasehold improvements, all of such award being payable to the Lessor, who shall use so much thereof as may be necessary to restore the premises as nearly as possible to its original condition. Lessee shall have the option to perform such restoration, provided the whole of such award or such portion thereof as may be necessary to accomplish the restoration is made available to Lessee.

Total-Temporary: If the taking of the whole of the premises or such portion thereof as would render the use of the property, in Lessee's sole opinion, not suitable for Lessee's use as set forth above shall be taken for a period of one (1) year or less, the term of this Lease shall be tolled, and, all rent and other charges payable to Lessor shall abate from the time possession of the premises is surrendered to the taking authority and recommence when possession is restored to the Lessee. The basis for Lessee's damages against the condemning authority, if allowable, or against the total award shall be as suffered by Lessee for the interruption of Lessee's business and such additional relief as may be provided by law. If such taking shall extend beyond one (1) year, the taking shall, for the purpose of this Lease and at the option of Lessee, be considered permanent with the basis of Lessee's damages computed as a total permenent.

Partial-Temporary: If less than the whole of the premises or less than such portion thereof as would render the use of the premises not suitable for Lessee's purposes as aforesaid is taken, Lessee shall be entitled to a reduction of rental as is just and equitable, upon such date as possession is surrendered to the taking authority and continuing until possession is restored to the Lessee. In consideration of such reduction of rental, Lessee waives all rights to any portion of the award as may be payable to the Lessor.

General: Should the Lessor and Lessee be unable to agree as to the division of any singular award or the amount of any reduction of rents and other charges, such dispute shall be submitted for resolve to the court exercising jurisdiction of the condemnation proceedings, each party bearing its respective costs for such determination.

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Lessor covenants that at the effective date hereof it has no actual or constructive knowledge of any proposed condemnation of any part of the premises. In the event that subsequent to the effective date of this Lease, but prior to the commencement date, a total or partial condemnation, either temporary or permanent, is proposed by any competent authority, Lessee shall be under no obligation to commence or continue construction and charges, if any, payable to the Lessor shall abate until such time as it can be reasonable ascertained that the premises shall not be so affected.

ARTICLE XII

Lessee's Default and Bankruptcy

In the event that the Lessee shall fail to pay the rent when due or shall fail to perform any of its other obligations under this Lease (after notice of such default or breach shall have been given as hereinbelow provided), the Lessor may at its sole and exlusive remedy elect either:

(a) to re-enter the premises by summary proceedings or otherwise and re-let the premises, using its best effort therefor, and receiving the rent therefrom, applying the same first to the payment of rent accruing hereunder, the balance, if any, to be paid to the Lessee; but, the Lessee shall remain liable for the equivalent of the amount of all rent reserved herein less the receipt of re-letting, if any, and such amount shall be due and payable to the Lessor as damages or rent, as the case may be, on the successive rent days hereinabove provided, and the Lessor may recover such amount periodically on such successive days; or,

(b) to terminate this Lease and to resume possession of the premises wholly discharged from this Lease.

Such election shall be made by written notice to the Lessee at any time on or before the doing of any act or the commencement of any proceedings to recover possession of the premises by reason of the default or breach then existing and shall be final. If the Lessor shall elect to terminate this Lease, all rights and obligations whatsoever of the Lessee and of its successors and assigns, so far as the same may relate to the unexpired portion of the term hereof, shall cease, and within ten (10) days after receipt by the Lessee of notice of election by the Lessor to terminate this Lease, the parties shall, by an instrument in writing in form for recording, cancel this Lease and the unexpired portion of the term hereof and the Lessee shall surrender and deliver up to the Lessor the entire premises, together with all improvements and additions, except trade fixtures and other personal property, and, upon any default by the Lessee in so doing, the Lessor shall have the right forthwith to re-enter the demised premises either by summary proceedings or otherwise.

12.1. <u>Lessor's Remedies</u>: In case of such termination, or termination by reason of default on the part of Lessee, Lessee shall, forthwith pay to Lessor all sums which were due prior to the date of such termination and in addition thereof, and not in lieu thereof the Lessee shall, at the option and election of Lessor, which election may be changed at any time before the settlement

A true Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

(a) pay to the Lessor as damages a sum which at the time of such termination or at the time to which installments of liquidated damages shall have been paid, represents the amount by which the then rental value of the demised premises is less than the then value of the aggregate of the annual rent reserved and additional rent herein provided for the residue of the then current term; or

(b) indemnify the Lessor against loss of the rental and other payments herein named at the time of such termination during the residue of the term, foregoing two alternatives being separable.

12.2 Lessor's Right to Remedy Without Waiver If the Lessee shall default in the observance or performance of any conditions or covenants on Lessee's part to be observed or performed under or by virtue of any of the provisions in any Article of this lease, the Lessor, without being under any obligation to do so and without thereby waiving such default, may remedy such default for the account and at the expense of the Lessee. If the Lessor makes any expenditures or incurs any obligations for the payment of money in connection therewith, including but not limited to, reasonable attorney's fees in instituting, prosecuting or defending any action or proceeding, such sum paid or obligation insured, with interest at the rate of twelve percent (12%) per annum and costs, shall be paid to the Lessor by the Lessee as additional rent.

If this lease shall be assigned or subletted pursuant to Article 7.2 hereof, the provisions of this Article XII shall apply jointly and severally to Lessee and its successors in interest.

12.3. Notice of Default. In the event that the Lessee has failed to pay over to the Lessor in a timely fashion any rent due to the Lessor or if the Lessee shall be in default with respect to any other term and/or condition of this lease, Lessor shall give written notice to the Lessee as set forth in Article 13.9 of said default and the Lessee shall have thirty (30) days from the date of receipt of said notice to cure said default or breach.

12.4. Lessor's Default. Lessor shall in no event be in default in the performance of any of its obligations hereunder unless and until the Lessor shall have failed to perform such obligations within thirty (30) days, or such additional time as is reasonably required to correct any such default, after notice of said default to Lessor.

ARTICLE XIII

Miscellaneous Provisions

13.1. Except as specifically provided to the contrary in this Lease, it is the purpose and intent of the Lessor and Lessee that the annual rent reserved, hereinabove provided in Schedule "B" to be paid to the Lessor by the Lessee, be absolutely net to Lessor except for Lessor's obligation to pay real estate taxes up to the amount of the base year so that this Lease shall yield net to Lessee the annual rent reserved, as hereinabove provided in Schedule "B" to be paid in each year during the original term

True Copy Attest:

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

this Lease and during each additional option term and that all costs, expenses, additional rents, and obligations of every kind or nature, whatsoever, relating to the leased premises, or any improvements thereon, which may arise or become due during the term of this Lease, shall be paid by the Lessee and that the Lessor shall be indemnified and saved harmless by the Lessee from and against the same.

undel full

13.2. Subordination. Lessee agrees that it will, upon request of Lessor, execute, acknowledge and deliver any and all instruments deemed necessary by Lessor to give effect to, or notice of, such subordination of this Lease to mortgages or other instruments in the nature of mortgage, present or future.

13.3. Brokerage. Lessee warrants and represents that it has dealt with no broker in connection with the consumation of this Lease, and in the event of any brokerage claim against Lessor made by any broker predicated upon prior dealings with Lessee named herein, Lessee agrees to defend the same and indemnify Lessor against any such claim.

13.4. Status Report. Recognizing that both parties may find it necessary to establish to third parties, such as accountants, banks, mortgagees, or the like, the then current status of performance hereunder, either party, on the written request of the other made from time to time, will promptly furnish a written statement on the status of any matter pertaining to the Premises or this Lease.

13.5. Governing Law. This Lease shall be governed exclusively by the provisions hereof and by the laws of the Commonwealth of Massachusetts, as the same may from time to time exist.

13.6. When Lease Becomes Binding. Employees or agents of Lessor have no authority to make or agree to make a Lease or any other agreement or undertaking in connection herewith. The submission of this document for examination and negotiation does not constitute an offer to lease, or a reservation of, or option for, the premises, and this document shall become effective and binding only upon the execution and delivery hereof by Lessor and Lessee. All negotiations consideration, representations and understandings between Lessor and Lessee are incorporated herein and may be modified or altered only by agreement in writing between Lessor and Lessee, and no act or ommission of any employee or agent of Lessor shall alter, change or modify any of the provisions hereof.

13.7. Headings. The Article and Section headings throughout this instrument are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this Lease.

13.8. Waivers. Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder. No waiver by either party

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

at any time, express or implied, of any breach of any provisions of this Lease shall be deemed a waiver of a breach of any other provisions of this Lease or a consent to any subsequent breach of the same or any other provisions. If any action by either party shall require the consent or approval of the other party, the other party's consent to or approval of said action of any one occasion shall not be deemed a consent to or approval of any other action on the same or any subsequent occasion. Any and all rights and remedies which either party may have under this Lease or by operation of law, either at law or in equity, upon any breach, shall be distinct, separate and cumulative and shall not be deemed inconsistent with each other; and no one of them, whether exercised by said party or not, shall be deemed to be in exclusion of any other; and any two or more or all of such rights and remedies may be exercised at the same time. Without limiting the generality of the foregoing, if any restriction contained in this Lease for the benefit of either party shall be violated, said party, without waiving any claim for breach of agreement against the other party, may bring such proceedings as it may deem necessary, either at law or in equity, in its own name or in the name of the other party, against the person violating said restriction.

13.9. Notices. Any notice and other communication given pursuant to the provisions of this Lease shall be deemed to have been given only if in writing and mailed by certified mail or registered mail, return receipt requested, postage prepaid, and, except as may be expressly otherwise provided in this Lease any such notice or other communication shall be deemed given when mailed as in this Article provided. The addresses of Lessor and Lessee to which notice shall be sent are as set forth in Sections 1.8 and 1.9 or as shall by such notice be amended from time to time by Lessor or Lessee.

13.10. Interpretation. If any provision of this lease or the application of any provision to any person or any circumstances shall be determined to be invalid or unenforceable, then such determination shall not affect any other provision of this lease or the application of said provision to any other person or circumstances, all of which other provisions shall remain in full force and effect; and it is the intention of the parties hereto that if any provisions of this lease is capable of two construction, one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid.

13.11. A. Right of First Refusal To Purchase. It is expressly agreed that in the event Lessor shall wish to sell the premises, prior to the Lessor being able to sell the premises, Lessor shall have the obligation to first offer the premises to the Lessee, on such terms as Lessor has offered to any other party and received back a bona fide offer from said other party, and Lessee shall have the right, option, and privilege to purchase the premises upon such terms. Lessee shall exercise its right of first refusal, if at all, within sixty (60) days of written notice from Lessor.

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

B. Right of First Refusal to Lease If at any time during the term of this lease, Lessor shall receive a bona fide offer to lease the demised premises for a term to begin subsequent to the present demised term, or any extension thereof ~~and~~ desires to accept such offer, Lessor shall immediately submit to Lessee a written copy of such offer with a full disclosure of all terms and provisions thereof and lessee shall have sixty (60) days after receipt thereof from lessor in which to elect to lease said premises upon the terms and provisions contained in such offer.

13.12. Complete Agreement. This lease contains a complete expression of the agreement between the parties and there are no promises, representations or inducements except such as are herein provided.

13.13. Exclusives. Lessor agrees that during the term of this lease and extensions hereof no occupant of any building in the shopping center other than the herein leased premises shall be allowed to sell the following items:

A. Packaged fluid milk in one quart or larger container.
B. Commercially packaged bread products.
C. Delicatessen items normally sold in grocery stores, including packaged lunch meats and prepared sandwiches.
D. Grocery items.
E. Cigarettes and tobacco products, unless vended by machine.
F. Beer and wine for off premise consumption.
G. Health and Beauty aids.
H. Soft drinks in six pack, eight pack, case lots or by the cup.
I. Candy, unless gift boxed or sold in bulk.
J. Coffee.
K. Newspapers, magazines and paperback books.
L. Motor fuels or petroleum products.
M. Mass. State Lottery.

For purposes of this lease the term "shopping center" is defined as all property owned or controlled by Lessor which is a part of or contiguous to the leased premises. Lessor agrees to protect Lessee's exclusive right to sell the above items in any future sale or lease of such property. If a court shall find these convenants unreasonable, they shall be limited as the court determines to be enforceable.

13.14 Exclusives. Lessor will not grant any exclusives to any other tenant in the shopping center that is in conflict to any exclusives in Article 13.13.

~~13.15 Covenant Not to Compete: Lessor agrees that upon payment by Lessee to Lessor the sum of $50,000, Lessor shall not conduct a "like" business within a two mile radius. PAyment will be made to Lessor upon lease commencement.~~

The Schedules referred to in and attached to this lease are incorporated where referred to by reference and are to be construed as an integral part of this lease.

~~* or any affiliated or related person or entity, either directly or indirectly,~~

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

WITNESS the execution hereof, under seal, in any number of counterpart copies, each of which shall be deemed an original for all purposes as of the day and year first written.

LESSOR Mather Realty Trust

By: F. T. Mather Sr.

LESSEE CHRISTY'S MARKET, INC.

By: C.E.O
Christy P. Mihos
Chief Executive Officer

Doc #0388W

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

# SCHEDULE A

| | | |
|---|---|---|
| To Lease dated | | |
| by and between | MATHER FAMILY TRUST, | LESSOR |
| and | CHRISTY'S MARKETS, INC., | LESSEE |

PROPERTY ADDRESS: 800 Crescent St. Brockton, Mass.

SPACE: Leased Space

LEGAL DESCRIPTION: As shown on attached diagram, more specifically as outlined in red.

True Copy Attest

Office of Clerk of Superior Cou[illegible]
Counties of Providence & Brist[illegible]
Providence, Rhode Island

EXHIBIT "A"

This Exhibit 'A' superseded by new Schedule A




True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Replaced by New Schedule B attached to Amendment

SCHEDULE B

To Lease Dated:

By and Between MATHER FAMILY TRUST ,LESSOR

And CHRISTY'S MARKETS, INC. LESSEE

ORIGINAL LEASE TERM: Ten (10) Years

Commencement Date: Sixty 60 days after the receipt by Lessee of all permits described in 1.3 for the intended use. Lessor shall deliver possession of the permises, with all of his equipment removed, within two weeks of written notice from Lessee that it has received all necessary licenses, permits and governmental authorizations for the renovation of the premises. Lessee, at its sole cost and expense, shall use its best efforts to promptly apply for and obtain said licenses, permits, and authorizations, and Lessor agrees to provide all reasonable and necessary cooperation in these efforts.

OPTIONS TO RENEW: Four (4) Five (5) year options.

Replaced by new Sched B attached to amendment

rue Copy Attest

[signature]

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Replaced by New Schedule

SCHEDULE C

To Lease Dated

| | | |
|---|---|---|
| By and Between | MATHER FAMILY TRUST | LESSOR |
| And | CHRISTY'S MARKETS, INC. | LESSEE |

RENTAL:

| | LEASE YEAR | YEARLY | MONTHLY |
|---|---|---|---|
| Original Year | 0 - 10 | $38,400 or 4% of gross sales,whichever is greater. *Plus .01 per gal on thru-put in years 1 - 5 .015 per gallon on thru-put in years 6 - 10 | $3200. |
| First Option | 11 - 15 | $44,100 or $38,400 plus 70% of % increase of CPI or 4% of gross sales, whichever is greater. *Plus .02 per gal on thru-put | $3675 |
| Second Option | 16 - 20 | $44,100 or $38,400 plus 70% of % increase of CPI or 4% of gross sales, whichever is greater. *Plus .02 per gal on thru-put | $3675 |
| Third Option | 21 - 25 | $57,600 or $38,400 plus 70% of % increase of CPI or 4% of gross sales, whichever is greater. *Plus .02 per gal on thru-put | $4800 |
| Fourth Option | 26 - 30 | $57,600 or $38,400 plus 70% of % increase of CPI or 4% of gross sales whichever is greater. *Plus .02 per gal on thru-put | $4800 |

* Lessee shall pay $1 per year for rental of existing petroleum equipment (Pumps & Tanks)

* To be paid quarterly within 30 days after each quarter.

TAXES: Pro rata share based upon % of building occupied.

True Copy Attest
[signature]
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

EXHIBIT D

DEFINITION OF GROSS SALES

The phrase "Gross Sales", as used in this Lease, is hereby defined to mean the dollar aggregate of:

(a) the sales prices of all goods, wares and merchandise sold, and the charges for all services performed by the Tenant in, at, on or from the demised premises, whether made for cash, on credit, or otherwise, without reserve or deduction for inability or failure to collect, including but not limited to such sales and services (i) where the orders therefor originate at and are accepted by the Tenant in the demised premises but delivery or performance thereof is made from or at any place other than the demised premises, (ii) pursuant to mail, telegraph, telephone, or other similar orders received or filled at or from the demised premises, (iii) by means of mechanical and other vending devices in the demised premises, (iv) as a result of transactions originating upon the demised premises, and/or (v) which the Tenant in the normal and customary course of its operations would credit or attribute to its business upon the demised premises, or any part or parts thereof; and no governmental sponsored lottery sales or commission figures shall be included in gross sales figures for the purpose of percentage rent. The term "Percentage Rent Year" shall be from July 1 through June 30 of each year.

(b) all moneys or other things of value received by the Tenant from its operations at, in, or from the demised premises which are neither included in nor excluded from gross sales by the other provisions of this definition; and

The phrase "Gross Sales" shall also include such gross sales made by a sublessee, concessionaire, licensee or otherwise at, in, on or from the demised premises, and such gross sales made by sublessees, concessionaires, licensees, or otherwise shall be included in the reports provided for in this Lease.

"Gross Sales" shall not include: (a) the exchange of merchandise between stores of Tenant where such exchanges are made solely for the convenient operation of Tenant's business and not for the purpose of consumating a sale which has theretofore been made at, in on or from the demised premises and/or for the purpose of depriving the Landlord of the benefit of a sale which otherwise would have been made at, in on or from the demised premises; or (b) returns to shippers or manufacturers; (c) sales of fixtures after use thereof in the conduct of Tenant's business in the demised premises (d) ATM commissions; or (e) sales of newspapers; and there shall be deducted from gross sales: (i) cash or credit refunds made upon transactions included within gross sales, not exceeding the selling price of merchandise returned by the purchaser and accepted by the Tenant, and (ii) the amount of any city, county, state or federal sales, luxury, or excise tax on such sales which is both (a) added to the selling price or absorbed therein, and (b) paid to the taxing authority by the Tenant.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

EXHIBIT D (cont)

Amended

"Gross Sales" shall not include gasoline sales. (iii) Within ~~ninety (90) days after the end of Tenant's Fiscal Year, and within~~ ninety (90) days after the end of the Term of this lease, ~~Tenant~~ may furnish to Landlord if requested a ~~statement certified~~ to Landlord by an independent ~~certified~~ public accountant, of Gross Sales ~~transacted (including~~ gas sales) at the premises during the ~~preceding Fiscal Year, or portion thereof included in the Term of this Lease~~.

Reporting Amended

(4)

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

**SECOND AMENDMENT TO LEASE**
**DATED MARCH 8, 1989**
**BETWEEN**
**FRED T. MATHER AND VIOLET M. MATHER AS LESSOR**
**AND**
**CHRISTY'S MARKET, INC. AS LESSEE**

WHEREAS, Fred T. Mather and Violet M. Mather as Lessor and Christy's Market, Inc. as Lessee entered into a Lease dated March 8, 1989 which was amended May 9, 1989 for the premises 800 Crescent Street, Brockton, Massachusetts (the "Lease"); and

WHEREAS, the parties wish to further amend the Lease in certain respects.

NOW THEREFORE, in consideration of the above recitals and other good and valuable consideration the parties agree as follows:

Paragraph 13.15 is amended to include the following additional provision at the end thereof:

"This covenant not to compete shall extend for the original term of this Lease."

In all other respects, the Lease dated March 8, 1989 is hereby ratified and affirmed.

LESSOR:

Fred T. Mather
Fred T. Mather

LESSEE:

Christy's Market, Inc.

By: David A. Goodman
VP Finance

LESSOR:

Violet M. Mather
Violet M. Mather

2432D

rue Copy Attest

Office of Clerk of Superior Cou
Counties of Providence & Brist
Providence, Rhode Island

EXHIBIT "A




True Copy Attest

Office of Clerk of Superior Co
Counties of Providence & Bris
Providence, Rhode Island

A




True Copy Attest.
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island




True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Use as Amendment date

Lew #48
Brockton
, 800 Crescent

AMENDMENT TO LEASE
DATED MARCH 8, 1989
BETWEEN
MATHER FAMILY TRUST - LESSOR
AND
CHRISTY'S MARKET, INC. - LESSEE

Whereas, Mather Family Trust, as Lessor, and Christy's Market, Inc., as Lessee, entered into a lease dated March 8, 1989 for the premises 800 Crescent Street, Brockton, Massachusetts (the "Lease"); and

Whereas, the parties wish to amend the Lease in certain respects.

Now therefore, in consideration of the above recitals and other good and valuable consideration, the parties agree as follows:

I. The Lease is hereby amended in the following respects:

A. The introductory paragraph is stricken and the following is substituted:

> "Lease dated March 8, 1989 by and between Fred T. Mather and Violet M. Mather of 6 Howard Lane, Avon, MA 02322 (hereinafter "Lessor"), and Christy's Market, Inc., a Massachusetts business corporation, of 22 Christy's Drive, Brockton, MA 02401 (hereinafter "Lessee")."

B. The following Articles are amended as follows:

1.1 Premises. The existing land and buildings described in a deed from Mobil Oil Corporation to Fred T. Mather and Violet M. Mather, recorded at

True Copy Attest
[signature]
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Plymouth County Registry of Deeds Book 6309, Page 306, and as described on Schedule "A", attached hereto and made a part hereof known as 800 Crescent Street, Brockton, MA. [Substituted in full.]

see MJD 8/30/19 ltr interpretation

1.5 Use of Premises. Lessee shall use the Premises as a 24 hour convenience food store and gasoline or other combustible fuel station, if permitted, similar in concept and operation as other such stores presently operated by the Lessee or any other lawful use. [Substituted in full.]

2.1 Premises. Lessor hereby leases to Lessee and Lessee leases from Lessor for the term and upon the terms and conditions hereinafter set forth the Premises which includes the existing 46' by 48' building and a 12' by 46' addition to be constructed by Lessee pursuant to Article 8.2(e). The leased Premises do not include any improvement which may hereafter be constructed by Lessor pursuant to Article 8.3(b). Lessee shall have the right to use in common with other tenants all adjoining parking areas, driveways, sidewalks, roads, alleys and means of egress and ingress insofar as Lessor has the power to lease the license thereof. Use of the parking areas is further subject to the condition that all employees of Lessee, Lessor, or other tenants of improvements which may be constructed by Lessor shall not use the spaces in front of the stores. All employees of Lessor and other tenants of improvements which may be constructed by Lessor shall park only on the East end of the site. Lessor agrees to place this condition regarding parking into the leases of all future tenants of the improvements which may be constructed by Lessor. [Substituted in full.]

Parking

5.1 Lessee agrees to pay all taxes levied upon personal property, including trade fixtures, signs, and inventory kept on the leased premises. Lessee agrees to pay Real Estate taxes in proportion to the percentage of square foot building space occupied by Lessee on the land. Thus Lessee will pay 100% of the real estate taxes until such time as occupancy permits, if any, are issued to Lessor for building to be constructed on property by Lessor. All real estate taxes shall be apportioned for any partial tax year obligations of either party.

Taxes

10/30/90 per Mike M.

The balance of Article 5.1, beginning with the sentence "Lessee shall have the right in its own name," remains unchanged.



True Copy Attest
[signature]
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

7.3 Add at the end thereof:

LIENS "Notwithstanding any other language contained herein, Lessor shall have the right to mortgage the premises for purposes of making the improvements referred to in Article 8.3(b)."

MAINT 8.1(d) From and after the commencement date, Lessee shall be responsible for the maintenance and repair of the underground gasoline tanks, pumps, and piping as well as any soil or water contamination occurring subsequent to the commencement date. Lessee further agrees to relocate or remove the existing underground tanks to an area which will not be in conflict or interfere with any improvements to be constructed by Lessor pursuant to Article 8.3(b), within sixty (60) days of Lessor's receipt of its Building Permits for such improvements, or within sixty (60) days of Lessee's receipt of its permit for self service gasoline sales, whichever first occurs. If Lessee fails to remove or relocate the tanks within the said sixty (60) days, Lessee shall pay to Lessor one hundred dollars ($100.00) per day from the sixty-first (61st) day until the tanks are moved or relocated. Any costs for replacement tanks which may be required or necessary during the relocation of the tanks shall be borne by Lessee. [Substituted in full.]

Lessor resp for contamination existing 8.3a

8.2(e) Lessor agree that Lessee shall renovate the existing structure on the premises and may further add on to the existing structure on Easterly side thereof with a 12' by 46' addition which shall be flush with the existing building, thus resulting in approximately at 2800 square feet of structure. This shall be the Lessee's sole cost and expense. [Substituted in full.]

Lessee renovation

Maint. 8.3 <u>Lessor's maintenance and alteration's responsibilities.</u> Lessor shall be responsible for any and all exterior repairs of any kind and nature to the existing building and the proposed addition by Lessee inclusive of repairs to the roof and walls. Any repaving which is required as a result of the removal or relocation of the underground gasoline tanks, pumps, and piping shall be the responsibility of Lessee. Thereafter, any parking area repairs or maintenance shall be borne proportionally in the same manner as real estate taxes.

(a) Lessor at his sole cost and expense by April 8, 1989 shall have the underground gasoline tanks and



True Copy Attest

[signature]

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

piping on the premises tested for leaks and general condition. Lessor shall also have the soil and ground water tested for contamination. Lessee and Lessor shall equally share the expenses of the soil and ground water tests. Lessor shall be responsible for any present contamination.

Lessor addition

(b) Lessor and Lessee further understand and agree that the Lessor may add further onto the existing structure after the Lessee has completed its addition pursuant Article 8.2(e) above. Any such addition by Lessor shall be on the Easterly side of the building adjacent to Lessee's proposed addition. Lessor's proposed construction under this Article shall not be done in the manner that will adversely affect the operation of Lessee's store. Subsequent to the completion to such construction by Lessor, the parties agree that Lessor may lease additional spaces to other tenants within this additional improvement, and Lessor or other tenants shall enjoy the right to use the existing parking area in conjunction with Lessee, subject to the conditions set forth in Article 2.1 above.
[Substituted in full.]

Parking

MISC

13.1 Except that as specifically provided to the contrary to this lease, it is the purpose and intent of the Lessor and Lessee that the annual rent reserved, hereinabove provided in Schedule "C" to be paid to the Lessor by the Lessee, be absolutely net to the Lessor except for Lessor's obligations to pay its prorata share of real estate taxes as required under Article 5.1 above, and except for Lessor's obligations to make repairs and undertake maintenance as set forth in Article 8.3 above, this lease shall yield net to Lessee the annual rent reserved to paid in each year in the original term of this Lease and in each additional option term and that all costs, expenses, additional rents, and obligations of every kind or nature whatsoever relating to the leased premises as set forth in this Lease which may arise or become due during the term of this lease shall be paid by the Lessee and that the Lessor shall be indemnified and saved harmless by the Lessee from and against the same. [Substituted in full.]

15 further amended 3/89

13.15 <u>Covenant Not to Compete</u>. Lessor agrees that upon payment by Lessee to Lessor of the sum of $50,000.00, Lessor shall not conduct a "like" business within a two mile radius of the leased premises. Payment will be made to Lessor upon leased

"is covenant not to complete shall extend for the original term"



Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

commencement. Notwithstanding any other provision contained herein, Lessee agrees to allow Fred T. Mather, Jr. to run his business at 603 Montello Street, Brockton, Massachusetts, even though that business may overlap as to some types of services and goods to be sold by Lessee. [Substituted in full.]

Controller
Chief Accountant
REPORTING

Schedule D (iii): Within ninety (90) days after the end of Lessee's fiscal year, and within ninety (90) days after the end of the term of this Lease, Lessee shall furnish to Lessor, if requested, a statement certified to Lessor by an independent certified public accountant (or copies of any and all documents which any government agency requires Lessee to keep regarding gross sales for the premises) of gross sales transacted (including gas or other combustible fuel sales) at the premises during the preceding fiscal year, or portion thereof, included in the term of this Lease. Lessor covenants and agrees that all such information which is request pursuant to this paragraph shall be kept confidential and divulged only to accountants, attorneys, or other necessary fiduciaries of Lessor. [The balance of Schedule D remains unchanged.]

13.16 [New] Lessor's Transfer to Trust. The parties understand that Lessor intends to convey title to the premises to the Mather Family Trust. Upon such conveyance the Trust and Lessee shall be bound by and entitled to all of the burdens and benefits contained herein, including, but not limited to the covenant not to compete set forth at Article 13.15.

The attached Schedules A, B, and C are substituted in full.

In all other respects, the Lease dated March 8, 1989 is hereby ratified and affirmed.

LESSOR:

Fred T. Mather
Fred T. Mather

Violet M. Mather
Violet M. Mather

LESSEE:

Christy's Market, Inc.

By: ____________________

A True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

2088D

SCHEDULE A




True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

**SCHEDULE B**

To Lease Dated: MARCH 8, 1989

By and Between Fred T. Mather and Violet M. Mather LESSOR

And Christy's Markets, Inc. LESSEE

Original Lease Term: Ten (10) years

Commencement Date: June 13, 1989

Options to renew: Four (4) Five (5) year options

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

cc Comptroller
Chief Accountant

NEW
#48 BROCKTON

SCHEDULE C

To Lease Dated MARCH 8, 1989

By and Between Fred T. Mather and Violèt M. Mather LESSOR

And CHRISTY'S MARKETS, INC. LESSEE

RENTAL:

| | LEASE YEAR | YEARLY | MONTHLY |
|---|---|---|---|
| Original Year | 0 - 10<br>6/13/89 - 6/30/99 | $38,400 or 4% of gross sales, whichever is greater.<br>*Plus .01 per gal on thru-put in years 1 - 5<br>.015 per gallon on thru-put in years 6 - 10 | $3200. |
| First Option | 11 - 15<br>7/1/99 - 6/30/04 | $44,100 or $38,400 plus 70% of increase of CPI ** or 4% of gross sales, whichever is greater.<br>*Plus .02 per gal on thru-put | $3675 |
| Second Option | 16 - 20<br>7/1/04 - 6/30/09 | $44,100 or $38,400 plus 70% of increase of CPI** or 4% of gross sales, whichever is greater.<br>*Plus .02 per gal on thru-put | $3675 |
| Third Option | 21 - 25<br>7/1/09 - 6/30/14 | $57,600 or $38,400 plus 70% of increase of CPI** or 4% of gross sales, whichever is greater.<br>*Plus .02 per gal on thru-put | $4800 |
| Fourth Option | 26 - 30<br>7/1/14 - 6/30/19 | $57,600 or $38,400 plus 70% of increase of CPI** or 4% of gross sales whichever is greater.<br>*Plus .02 per gal on thru-put | $4800 |

* Lessee shall pay $1 per year for rental of existing or replacement petroleum equipment.

revised 8/12/89 * To be paid quarterly within 30 days after each quarter.

** All measurements of increase in the CPI shall be based on the consumer price index as of July 1, 1989.

As used herein, the term "thru-put" shall mean the total gallons of gasoline or other combustible fuel sold at retail by Lessee on the premises.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

7-ELEVEN, INC.
Real Estate Services
2711 North Haskell Avenue
Dallas, Texas 75204-2906

Marguerite Brindock
Direct Dial No. (214) 828-5543
Facsimile No. (214) 841-6677
Email – mbrind01@7-11.com

Via Fax 508/584-4614
April 27, 2004

John E. McCluskey
McCluskey, Yunits & Buckley
Attorneys at Law
932 Main Street
Brockton, MA 02301

RE: Location 32453
800 Crescent, Brockton, MA

Dear Mr. McCluskey:

Please be advised that the two (2) gas dispensers, located at the subject property, will not be removed by 7-Eleven, Inc. In addition, we are in the process of locating and returning the ATG (automatic tank gauge) console which is a part of the probe system. The gauge will then be reinstalled and programmed for use with the current tanks. We will agree to cover the estimated cost of installation of overfill drop tubes in all of the tanks. This work should be performed by Mr. Mather's contractor. The product line on Tank #2 can then be tested, upon delivery of fuel to the tank and resumption of the power line to the facility. We are again agreeable to covering the estimated cost of this activity provided that it is performed by Mr. Mather's contractor. Regarding the installation of dispenser sumps, we will not cover this expense since their installation is not a state requirement in most instances. Finally, we will be responsible for the expense associated with the removal of the heating oil tank, provided that the removal is done by Mr. Mather's contractors.

rue Copy Attest
Office of Clerk of Superior Cou
Counties of Providence & Brist
Providence, Rhode Island

As to the condition of the premises, we are taking steps to locate and re-install the three-bay stainless sink as well as to make the repairs to the storefront. The other items listed on your estimate, in part, appear unreasonable. In accordance with the lease, we are not required to replace items upon lease expiration but rather to deliver the premises in good order and repair, reasonable wear and tear excepted. Therefore, we are willing to settle the landlord's claim for repairs at this store for $10,000. This would be in addition to the expense that we have agreed to cover in connection with the petroleum equipment and the removal of the heating oil tank, as referenced herein. Based upon the estimates provided (which did not include removal of the heating oil tank), we will agree to the payment of $6000 to address the expenses associated with the heating oil tank and the petroleum equipment.

It is my hope that we can reach an agreement shortly to provide for a full release of 7-Eleven under the lease. I will advise you when the reinstallation of the monitoring system and the sinks is completed along with the storefront repair.

Please call me if you have any questions.

Very truly yours,

Marguerite Brindock
Sr. Real Estate Representative

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

# STATE OF RHODE ISLAND
# SUPERIOR COURT

## CIVIL CASE COVER SHEET

| Case * (Filled in by Clerk's Office) |
|---|
| |

This form must be filed with each original document that comences a civil proceeding in the Clerk's Office. If the case is a District Court appeal, the form must be filed with the appeal in the District Court and will then be transferred with other documents to the Superior Court.

| PLAINTIFFS: | DEFENDANTS: |
|---|---|
| MATHER FAMILY TRUST | 7-ELEVEN, INC. |

**NATURE OF PROCEEDING** — Check the applicable case type under main categories listed below. (check one only)

**District Court Appeal** ☐ Yes (check type below)

- ☐ AGA Agency appeal
- ☐ ANT Anti-trust
- ☐ ASB Assault and battery
- ☐ BKA Book account
- ☐ CIC Criminal inj. compensation
- ☐ CLA Common law assignment
- ☐ CLL Common law lien
- ☐ CON Contract
- ☐ CNV Conversion
- ☐ CRC Criminal conversation
- ☐ CRJ Civil Rights Job Discrimination
- ☐ DEJ Declaratory judgment
- ☐ DIN Recovery of damages/insurance
- ☐ DOJ Debt on judgment
- ☐ DPC Denial of probate claim
- ☐ Other than above (specify type):
- ☐ DTP Deceptive trade practice
- ☐ EXT Excessive tax
- ☐ FOR Forfeiture
- ☐ FRJ Foreign Judgment
- ☐ IDV Personal inj./property dam-vehicle
- ☐ INR Injunctive relief
- ☐ IPL Interpleader
- ☐ LIB Libel/slander
- ☐ MLE Malpractice/legal
- ☐ MME Malpractice/medical
- ☐ MOT Malpractice/other
- ☒ PDM Property damage
- ☐ PDV Property damage / vehicle
- ☐ PER Personal injury
- ☐ PIV Personal injury-vehicle
- ☐ PRL Product liabilty
- ☐ PRN Promissory note
- ☐ PRT Partition
- ☐ RIC Reinstate charter
- ☒ RLP Real property
- ☐ ROF Recovery of funds
- ☐ SAB Sexual abuse
- ☐ SPP Specific performance
- ☐ SXH Sexual harassment
- ☐ TAE Trespass and ejectment
- ☐ TCO Title clearing (other than tax title)
- ☐ TCT Trustee/appt convey title
- ☐ TRA Trustee/accounting
- ☐ UNM Uninsured motorist
- ☐ WOM Mandamus. Writ of
- ☐ WOR Replevin, Writ of
- ☐ WRD Wrongful death

### MISCELLANEOUS PETITIONS

- ☐ AOD Assessment of damages
- ☐ AOS Trustee successor
- ☐ AOT Trustee / appointment of
- ☐ ABA Arbitration award
- ☐ CAR Arbitration /confirm
- ☐ CFC Confirm compromise
- ☐ CND Condemnation
- ☐ CNT Contempt
- ☐ DOC Dissolution of corp.
- ☐ DET Trustee / declination of
- ☐ DSC Disclaimer
- ☐ Other than above (specify type):
- ☐ EDP End partnership
- ☐ FOC Forfeiture of charter
- ☐ FRR Forclosure of right redemption
- ☐ GJI Grand jury investigation
- ☐ HAC Habeas corpus
- ☐ LCN Level of community notification
- ☐ MAW Material witness
- ☐ MEL Mechanics lien
- ☐ OSW Out of state witness
- ☐ PCR Post conviction relief
- ☐ PFC Petition for constable
- ☐ PFI Petition for immunity
- ☐ PFR Petition for review
- ☐ PFS Perform surgery
- ☐ PIN Pet for inventory (wire tap)
- ☐ PTD Pet to take deposition
- ☐ PTE Petition to expunge
- ☐ R5A Rule 5A petition
- ☐ REC Receivership
- ☐ RTA Arbitration referral
- ☐ SVP Sexually violent predator petition
- ☐ TCL Title clearing (tax title)
- ☐ TLF Foreclosure / tax lien
- ☐ VAR Arbitration / vacate

### PROBATE APPEALS

- ☐ WIL Will
- ☐ TRS Trust
- ☐ GRD Guardianship
- ☐ NAM Name change
- ☐ Other than above (specify type):

Is this a case that may require a trial for resolution? ☒ Yes ☐ No If yes: ☐ Jury or ☐ Nonjury

( Attorney name and Registration # Michael A. Kelly, Esquire (#2116) 30, 2004 (Date)
55 Pine Street, Suite 5000, Providence, RI 02903

Pro se/Name [signature]

True Copy Attest
[signature]
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

SUPERIOR COURT FILED HENRY S. KINCH JR., CLERK 2005 JAN 13 P

SC-223 (Rev. 11/00)